FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| CYNTHIA HUGHES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 98-PWG-0161-NW |
| | ) |
| CITY OF FLORENCE, ET AL., | ) **ENTERED** |
| | ) |
| Defendants. | ) **MAR - 9 2000** |

### MEMORANDUM OF DECISION

This matter is before the court on defendants' motion for summary judgment. (Document #13). The undersigned magistrate judge has jurisdiction pursuant to 28 U.S.C. § 636(c).

Plaintiff filed this complaint naming as defendants the City of Florence, the City of Florence Police Department and Officers Spence Butler and Paul Ivey.[1] Although the City of Florence Police Department was named as a defendant, plaintiff has not indicated that any of the counts in the complaint are directed against the City of Florence Police Department. To the extent that any counts could be construed as directed against not only the City of Florence but also against the City Florence Police Department, the claims against the police department would be redundant. *See Wayne v. Jarvis*, 197 F.3d 1098, 1106(11th Cir. 1999).

### Counts of the Complaint

In counts I and II of her complaint plaintiff alleges that defendants Butler and Ivey violated her constitutional rights by subjecting her to the use of excessive force in violation of the Fourth, Fifth and Eighth Amendments of the Constitution. In count III plaintiff alleges that the

---

[1] Plaintiffs also named "unknown officers A & B" and "unknown supervisors C & D." The fictitious defendants were sticken from the complaint because there is no provision for fictitious party practice in federal court. (Document #4).



Defendant City of Florence had a policy or practice of authorizing officers to use excessive force. In count IV, plaintiff alleges that defendants Butler and Ivey conspired to violate her constitutional rights. In counts V and VI plaintiff alleges that defendants Butler and Ivey committed an assault and battery against her when they subjected her to the use of excessive force. In counts VII and VIII plaintiff alleges that the use of excessive force by defendants Butler and Ivey resulted in the intentional infliction of emotional distress. In counts IX and X plaintiff alleges that the City of Florence is liable under the theory of *respondeat superior* for the intentional torts of defendant officers. In counts XI and XII plaintiff alleges that defendants Butler and Ivey acted negligently and with willful and wanton indifference when they subjected plaintiff to the use of excessive force. In Count XIII plaintiff alleges that the City of Florence acted negligently in failing to adequately train, supervise and control defendant officers. In count XIV plaintiff alleges that defendants Butler and Ivey "used criminal process against plaintiff in order to intimidate her and to dissuade plaintiff from asserting her rights against defendants and in order to cover up their own wrongdoing to avoid civil and criminal liability for their own acts" and that defendants Butler and Ivey falsely arrested and falsely imprisoned plaintiff. Finally, in count XV plaintiff alleges that defendants Butler and Ivey failed to provide prompt medical treatment to plaintiff upon her arrest.

Standard of Review

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that

he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

Undisputed Facts

The following facts are undisputed or, if disputed, viewed in a light most favorable to plaintiff. On or about September 1, 1996 Cynthia Hughes resided at 416 West Tombigbee in Florence, Alabama. (Plaintiff's depo. at 8, Exhibit A). Plaintiff's grandmother, Ms. Cornelia Evans, lived next door at 420 West Tombigbee. *Id* at 8-9.

3

On the afternoon of September 1, 1996 plaintiff and her brother, Tony Hayes, and three of plaintiff's friends went to a club in Minor Hill, Tennessee where plaintiff drank at least five beers. *Id.* at 19. They left Florence around 5:30 p.m., returning around 9:30 p.m. *Id.* at 19-21. At plaintiff's residence on Tombigbee Street, plaintiff's brother, Tony Hayes, became involved in an argument with Tommy Staggs who had arrived at plaintiff's house at approximately the same time plaintiff, her brother and her friends had returned from Tennessee. *Id.* at 32. The argument took place on plaintiff's front porch. *Id.* at 34. Tony Hayes and Tommy Staggs began to scuffle. *Id.* at 36-37. Another man intervened and the fighting stopped. *Id.* at 38.

After plaintiff went into the house, Tony Hayes and Tommy Staggs resumed their argument and police were called to the scene. One of the defendants, Police Officer Spence Butler, responded to the call from the Florence police dispatcher who reported "two males fighting in front of 416 West Tombigbee." (Butler depo. at 64). When Officer Butler arrived he saw two white males fighting on the sidewalk in front of 416 West Tombigbee. *Id.* at 66. When Officer Butler exited his vehicle, the men ran in opposite directions. *Id.* at 74. Officer Butler pursued the one closest to him who ran in between 416 West Tombigbee (plaintiff's house) and 420 West Tombigbee (Cornelia Evans' house). *Id.* at 74. Officer Butler later determined that this individual was Tony Hayes. *Id.* at 76. Butler caught Hayes behind plaintiff's residence. *Id.* at 88. Hayes began cursing Butler and swinging his fists. *Id.* at 90. Officer Butler and Hayes scuffled as Butler tried to handcuff Hayes. Hayes kicked and fought Officer Butler. (Ivey depo. at 24). Officer Ivey then arrived to assist Officer Butler. Officer Ivey was also kicked. It took both officers to handcuff Hayes. (Ivey depo. at 27).

At this time plaintiff was inside her home. Her friend's daughter told her "that the police were out there and they were beating or whooping or beating on Tony." (Plaintiff's depo. at

4

29; 38-39). Plaintiff confronted the officers outside her home. She told them to leave her brother alone. She also began cursing the officers, telling them "leave him ... the hell alone" or "keep your G-D hands off him." *Id.* at 42. Plaintiff never placed her hands on the officers, (Plaintiff's depo. at 41), nor did she physically attempt to interfere with her brother's arrest. *Id.* at 44.

At some point after she told the officers to leave her brother alone, plaintiff was struck in the face with an officer's flashlight.[2] (Plaintiff's depo. at 40). As a result of the blow, she fell to the ground. *Id.* at 41. While on the ground, her head was pushed into a tree stump. She was also kicked in the sides. *Id.* at 39-40; 43. Plaintiff could not testify that she knew which officer struck her and kicked her. *Id.* at 40).

Plaintiff's grandmother (Evans) was also present. She testified that an officer struck plaintiff with a "long black stick." (Evans' depo. at 11-12). She further testified that the officer kind of "looked like a Mexican" and "didn't look real white and he didn't look real black." (Evans' depo. at 15). Officer Ivey is white and Officer Butler is black. Officers Butler and Ivey each deny striking plaintiff. They contend that any injury that plaintiff received occurred when she fell to the ground while resisting arrest. (Butler depo. at 109-109; Ivey depo. at 59).

Officer Butler testified in deposition that he was responsible for plaintiff falling to the ground:

> Q: Describe the manner in which you took her to the ground.
>
> A: She was so small, when I grabbed her, we both went to the ground. It wasn't like I took her to the ground. She didn't weigh over – I don't know how much she weighed, but it wasn't that much.

---

[2] On September 1, 1996 Cynthia Hughes weighed approximately 125 pounds and stood 5'3" tall. (Plaintiff's depo at 54-55). Defendant Spence Butler weighed approximately 170 pounds and stood 5'10" tall. (Butler depo. at 7-8). Defendant Paul Ivey weighed approximately 175 pounds and stood 5'7" tall. (Ivey depo. at 6).

5

> Q: Did you fall forward?
>
> A: Yes, sir.
>
> Q: Did she fall backward:
>
> A: Yes, sir.
>
> Q: If she fell backward, how did she cut her face in the fall?
>
> A: Sir, I don't – what you're asking me is totally irrelevant. I don't understand what you're asking me. I don't know how she cut her face. All I know is when she went to the ground, and we got her up with cuffs, she had a cut right above her eye.

(Butler depo. at 111-12).

Plaintiff was transported to the emergency room where she received treatment for her injuries. *Id.* at 46. While at the emergency room, plaintiff was informed, for the first time, that she was under arrest. *Id.* at 50. When she was released from the emergency room, she was transported to the Florence Police Department. She was charged with resisting arrest and public intoxication. (*See* Butler depo. at 119-20; Defendants' Exhibit E). Following a trial in the Municipal Court of Florence, plaintiff was acquitted of these charges. (Butler depo. at 114-15; see also plaintiff's depo. at 17).

I.   Claim Against Supervisors

Defendants argue that count III is due to be dismissed as to the supervisors because plaintiff has not presented evidence that the supervisors "exercised any control or direction in the incident in question ... [and] no affirmative link has been established to connect any supervisors with any constitutional violation." (Defendants' brief, unnumbered p.8). Plaintiff has not addressed this argument and it is unnecessary for the court to address this issue as the fictitious parties – including "unknown supervisors C & D" were stricken from the complaint on the basis that there

6

is no provision for fictitious party practice in federal court (document #4). Plaintiff did not amend the complaint to add named supervisors as defendants although she had until August 1, 1998 to do so. (See document #8). Defendants have not requested summary judgment in favor of the City of Florence on count III – nor have they requested summary judgment in favor of the City of Florence on counts IX, X and XIII.

II.     Excessive Force Claim and Related Claims

Claims I and II (excessive force in violation of constitutional rights), claims IV (conspiracy to violate constitutional rights), claims V and VII (assault and battery), claims VII and VIII (intentional infliction of emotional distress), claims XI and XII (negligence) all relate to the alleged use of excessive force. Defendants Butler and Ivey have not attempted to distinguish between the federal constitutional claims and the state law tort claims.

A.      Defendant Butler

Defendants allege that summary judgment is appropriate because plaintiff cannot testify which of the officers hit her with a flashlight, kicked her or pushed her head into a stump. While plaintiff was unable to identify which of the defendants struck her, caused her to fall, kicked her or hit her head on a stump, defendant Butler, in his deposition, testified that he grabbed plaintiff by the arm (Butler depo. at 110), fell to the ground with her (*id.* at 110), and that when she got up, she had a cut above one eye. (*Id.* at 112).[3/] Butler's admission that he was the officer involved in the fall is sufficient to identify him as the officer who, according to plaintiff, used excessive force.

An excessive force claim brought under § 1983 for conduct occurring "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the

---

[3/]     Butler also denied striking, kicking or hitting plaintiff with an object. (*Id.* at 108).

7

Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Supreme Court has described the test of reasonableness under the Fourth Amendment as follows:

> ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Tennessee v. Garner*, 471 U.S. at 8-9, 195 S.Ct. at 1699-1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").
>
> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. ... "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick,* 481 F.2d at 1033, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that policy officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

490 U.S. at 396-397.

In *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997), the Eleventh Circuit explained the law of qualified immunity in the context of a Fourth Amendment claim where there

is no factually similar case:

> An officer sued as an individual is entitled to qualified immunity if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ... "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Fourth Amendment jurisprudence has staked no bright line for identifying force as excessive. Therefore, unless a controlling and factually similar case declares the official's conduct unconstitutional, an excessive-force plaintiff can overcome qualified immunity only by showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law. Smith cites no Fourth Amendment case, and this court has located none, in which a police officer subjected a previously threatening and fleeing arrestee to nondeadly force after the arrestee suddenly became docile. Smith therefore must show that Mattox's conduct was so far beyond the hazy border between excessive and acceptable force that Mattox had to know he was violating the Constitution even without case law on point.

*Smith v. Mattox*, 127 F.3d at 1419.

In *Smith v. Mattox* an officer involved in a reverse sting operation saw (the arrestee/plaintiff) in his mother's yard. An informant had told the police that three black males had cocaine in this yard.

> Upon seeing Mattox, Smith raised the baseball bat in a threatening posture. Mattox drew his gun to ready position and ordered Smith to drop the bat. Smith did not, and Mattox threatened to shoot. Smith then dropped the bat and ran through the backyard; down a driveway, and into a street running behind the house. Once in the street, Smith turned around, thinking that the threat from Mattox had passed, and started back toward the house. Meanwhile, however, Mattox had pursued Smith to the driveway, and other

9

> officers had also pulled up on the driveway side of the house.
>
> In the driveway, Smith came face to fact with Mattox. After first pretending to run again, Smith docilely submitted to arrest upon Mattox's request for him to "get down." Once Smith was on the ground, Mattox put his knee on Smith's lower back to prepare to handcuff him. In the process of pulling smith's left arm behind his back to fasten the handcuffs, Mattox put Smith's forearm to a position that cause smith discomfort. Smith complained, and then with a grunt and a blow–but no sign of anger–Mattox broke Smith's arm. Smith was then taken to the hospital and underwent surgery on his arm for multiple fractures.

127 F.3d at 1417-18.

Applying the test set forth in *Graham* in the qualified immunity context, the Eleventh Circuit concluded that the grunt and the blow that plaintiff heard and felt when the officer pulled plaintiff's arm behind his back coupled with the severity of his injury [a broken arm] and the fact that the plaintiff was offering no resistance at all pushed the case over the line so as to fall "within the slender category of cases in which the unlawfulness of the conduct is readily apparent even without clarifying case law."

Here plaintiff was charged with two minor offenses, resisting arrest, a misdemeanor, and public intoxication, a violation. Plaintiff's brother was also charged with a minor offense, disorderly conduct, a misdemeanor. There was no allegation that plaintiff had a weapon or that the officers believed she had a weapon. It is undisputed that plaintiff was both shorter and lighter than either defendant. Plaintiff's cursing of the officers, without more, did not pose an immediate threat to the officers. Plaintiff's brother had already been cuffed when Butler noticed seven or eight people standing in the backyard of 416 West Tombigbee. (Butler depo. at 98-102). There is no allegation

that anyone other than plaintiff said or did anything. Under plaintiff's version of the facts, plaintiff was not physically resisting the arrest of her brother or her own arrest. According to Ms. Hughes, in response to her verbal attempt to stop the defendants from beating her brother, she was struck with a flashlight, kicked, and her head was pushed into a tree trunk.

Based on the above facts, defendant Butler's "conduct was so far beyond the hazy border between excessive and a acceptable force that he had to know he was violating the Constitution even without case law on point." *Smith v. Mattox*, 127 F.3d at 1419. Defendant Butler is not entitled to qualified immunity on plaintiff's constitutional claim for the use of excessive force.

In Alabama, peace officers have statutory "immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." *Code of Alabama,* § 6-5-338. Acts that are in bad faith, malicious or in bad faith are not considered by Alabama law to be discretionary. *Sheth v. Webster*, 145 F.3d 1231, 1239 (11th Cir. 1998); *Wright v. Wynn*, 682 So.2d 1, 2 (Ala. 1996). The Court of Appeals for the Eleventh Circuit has noted that the Alabama Supreme Court has equated qualified immunity with discretionary immunity. The denial of qualified immunity on the constitutional claim in effect then creates an issue of fact on the state law claim as to whether defendant Butler acted maliciously, willfully or in bad faith with regard to the acts surrounding the alleged assault and battery. Defendant Butler is not entitled to discretionary immunity on the state law claims surrounding the assault and battery. Defendant Butler is not entitled to summary judgment on any of the excessive force or related claims.

B.  Defendant Ivey

Defendant Ivey is entitled to summary judgment on qualified immunity grounds with respect to all claims related to the excessive force claim. Plaintiff argues although Ivey did not

engage in any of the discrete acts of excessive force, he is nonetheless subject to liability under § 1983 for his inaction in protecting plaintiff from Butler's use of force which occurred in his presence. *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985). There is no evidence, however, that Ivey was aware of Butler's conduct toward plaintiff. Ivey testified that he was not involved in plaintiff's fall (Ivey depo. at 55), that he did not see anyone strike or kick plaintiff (Ivey depo. at 59), that he did not know whether defendant Butler struck plaintiff or not (Ivey depo. at 60), and his only involvement was to help defendant Butler to handcuff plaintiff when she was on the ground, (Ivey depo. at 55-56). Plaintiff offers no evidence to the contrary. Because there is no evidence that Ivey either used excessive force on plaintiff or failed to intercede knowing that defendant Butler used excessive force, Ivey is entitled to qualified immunity on all claims relating to excessive use of force as there is no evidence that a reasonable officer in defendant Ivey's position would have known that his conduct violated clearly established statutory or constitutional rights. Likewise, defendant Ivey is entitled to discretionary function immunity with respect to the state law claims which are related to the constitutional excessive force claims. *See Sheth, supra.*

III.     Malicious abuse of process, false arrest and false imprisonment

        Defendants Butler and Ivey argue that they are entitled to qualified immunity as to this claim because they had "arguable probable cause" to arrest plaintiff for disorderly conduct. It is undisputed that plaintiff was arrested for resisting arrest and public intoxication–not disorderly conduct. It is unclear from the complaint whether plaintiff meant to present this claim as a federal constitutional claim or a state law claim.

        An arrest made without probable cause violates the Fourth Amendment. *See Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). "An officer is entitled to qualified immunity, however, where the officer had 'arguable probable cause,' that is, where 'reasonable officers in the

12

same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiffs." *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998), *quoting Von Stein*. If there is arguable probable cause for any charges made, then the arrest was supported by probable cause and the claim for false arrest must fail. *See, Stachel v. City of Cape Canaveral*, 51 F. Supp. 2d 1326, 1331 (M.D. Fla. 1999). Taking the facts of the case in the light most favorable to plaintiff the court concludes that defendants Butler and Ivey had arguable probable cause to arrest plaintiff for disorderly conduct and for resisting arrest and are therefore entitled to qualified immunity to the extent that plaintiff presents this as a Fourth Amendment claim.

> *Code of Alabama*, Section 13A-11-7, governing disorderly conduct provides:
>
> (a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>   (1) Engages in fighting or in violent tumultuous or threatening behavior; or
>   (2) Makes unreasonable noise; or
>   (3) In a public place uses abusive or obscene language or makes an obscene gesture; or
>   (4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
>   (5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
>   (6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

Defendants argue:

> In the case at bar, plaintiff had admittedly cursed the officers on several occasions while they were in the process of making a lawful arrest. This conduct certainly gives rise to arguable probable cause that the plaintiff was committing the offense of disorderly conduct. Disorderly conduct can occur when an individual, with intent to cause public inconvenience,

13

annoyance or alarm, makes unreasonable noise or uses abusive or obscene language, among other things. Arguable probable cause that the plaintiff had committed this offense or others is clearly present.

It appears then that defendants argue that plaintiff's cursing constituted abusive or obscene language within the meaning of § 13A-11-7. In *Smith v. City of Anniston*, 668 So.2d 96 (Ala. Cr. App.), *cert. denied,* (Ala. 1995), the defendant, who was convicted of disorderly conduct, yelled "suck my dick" to a police officer "in the presence of other individuals who could hear and react." 668 So.2d at 98. The court held that it was a question of fact for the jury as to whether the conduct (the comment) was intended to cause public inconvenience, annoyance or alarm or whether the offender recklessly created a risk thereof and whether such conduct therefore amounted to disorderly conduct. In *Smith* the officer testified that after the defendant's conduct and while the officer arresting the defendant, "several other subjects became disorderly. We had quite a scene there for a few minutes." 668 So.2d at 96. Although there is no indication that in the present case other individuals became disorderly after plaintiff's comment, defendant could certainly have reasonably believed the comment to have been intended to incite the other persons present observing the arrest of plaintiff's brother. Even though defendants did not charge plaintiff with disorderly conduct, defendants would have had arguable probable cause to arrest plaintiff for disorderly conduct. The Fifth Circuit Court of Appeals has held that a police officer is entitled to qualified immunity for an unconstitutional warrantless arrest if he could have arrested the plaintiff for another offense which was related to the charged offense and if he demonstrates there was arguable probable cause to arrest the plaintiff for the uncharged related offense. *See Vance v. Nunnery*, 137 F.3d 270 (5th Cir. 1998).

14

Further, defendants had arguable probable cause to arrest plaintiff for resisting arrest, a charge for which she was arrested. *Code of Alabama*, Section 13A-10-41(a), provides "a person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting a lawful arrest of himself or another person." Plaintiff argues "plaintiff neither placed her hands on the officers ... nor did she attempt to interfere with her brother's arrest; ... [therefore], [t]here is a genuine issue as to whether the Florence Police Officer had even probable cause to believe Ms. Hughes resisted arrest." (Plaintiff's responsive submission, p.14). Plaintiff has not challenged the lawfulness of her brother's arrest. Plaintiff has admitted that she cursed the officers telling them either to "leave him ... the hell alone" or "keep your G-D hands off him." (Plaintiff's depo. at 42). Under Alabama law, the use of force is not an element of resisting arrest. *Sims v. State*, 733 So.2d 926, 930 (Ala. Cr. App. 1998); *Scott v. State*, 624 So.2d 230 (Ala. Cr. App. 1993). Moreover, the appellate court has concluded that under the right circumstances, mere words could constitute resisting arrest. *Sims*, *supra* at 930. In *Sims* the officer was attempting to execute an outstanding warrant and the defendant lied about his identity. The court concluded that this lie would not constitute resisting arrest because there was no evidence that defendant knew of the outstanding warrant and, therefore, there was no evidence of intent to resist arrest. In the case before this court, defendants were arresting plaintiff's brother for a misdemeanor (disorderly conduct based on his fighting) committed in their presence. Plaintiff's comment to police "to leave him ... the hell alone" or "keep your GD hands off him" could reasonably be viewed as plaintiff verbally resisting her brother's arrest. Because defendants had arguable probable cause to arrest plaintiff on at least

15

one of the charges for which she was arrested,[4] the Fourth Amendment false arrest challenge must fail.

Defendants Butler and Ivey are entitled to qualified immunity to the extent that this claim is intended as a Fourth Amendment constitutional claim. To the extent that this claim may have been intended as a state law claim, the court should decline to exercise supplemental jurisdiction over this claim because it is not readily apparent to the court that "arguable probable cause" is a concept recognized by Alabama law and, further, because the issue of whether the officers would have had probable cause to arrest plaintiff under Alabama law based on an uncharged offense would be a novel issue of state law. *See* 28 U.S.C. § 1367(c)(1).

IV.  Denial of medical treatment

Although plaintiff's complaint alleged denial of prompt medical attention, it is undisputed that plaintiff was taken to the hospital by ambulance immediately following the incident and that plaintiff does not complain about the medical care furnished to her after the incident. (Plaintiff's depo. at 52-53). By not responding to this portion of defendants' brief, plaintiff apparently concedes defendants are entitled to summary judgment on count XV, denial of medical treatment.

An order consistent with the Memorandum of Opinion will be entered.

As to the foregoing it is SO ORDERED this the 9th day of March, 2000.

_____
PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE

---

[4] Because defendants had arguable probable cause to arrest plaintiff for resisting arrest it is unnecessary to address whether defendants had arguable probable cause to arrest plaintiff for public intoxication.